**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**PINE BLUFF DIVISION**

**DEVERICK SCOTT**                                                                                    **PLAINTIFF**
**ADC #131042**

**V.**                                    **NO. 5:15CV00329 JLH/PSH**

**MOSES JACKSON, LASAUNDRA MALONE,**
**and MARK STEPHENS**                                                              **DEFENDANTS**

**PROPOSED FINDINGS AND RECOMMENDATION**

**INSTRUCTIONS**

The following Proposed Findings and Recommendation have been sent to United States District Judge J. Leon Holmes. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

**DISPOSITION**

**I. Introduction**

Plaintiff Deverick Scott ("Scott"), an inmate in the custody of the Arkansas Department of Correction ("ADC"), filed this *pro se* civil rights complaint against ADC employees Moses Jackson, Lasaundra Malone, and Mark Stephens (the "Defendants"). *See* Doc. No. 2. Scott alleges that Defendants violated his First, Eighth, and Fourteenth Amendment rights[1] by improperly

---

[1] In his response to Defendants' motion for summary judgment, Scott raises – for the first time – a Fourth Amendment claim based on the seizure of his personal property while he was on behavior

placing him on behavior control for seventy-two hours in retaliation for his previous use of the prisoner grievance system and for his formation of a non-profit organization called the "Black Bear Party," the purpose of which is to fight corruption within the ADC. *Id.* at 4. Scott sues Defendants in both their individual and official capacities. *Id.* at 2. He seeks changes to the ADC's behavior control policy and officer training regarding the policy, compensatory damages, and punitive damages. *Id.* at 12-14.

Scott alleges that on April 15, 2014, Nurse Sharon Halston falsely accused him of attempting to masturbate in front of her. Doc. No. 2 at 6-8, 32-35. He claims that the Defendants placed him on 72-hour Behavior Control several hours after the incident without knowing the complete facts and without counseling him first. *Id.* at 7, 34. He states that Defendants took all of his personal property other than a half roll of tissue, one blanket, and one pair of boxers, and he had to sleep on a cold concrete slab. *Id.* at 7. Scott further alleges that it was snowing outside on this day and the temperature outside his cell was 30-40 degrees, which was the same as inside his cell. *Id.* Scott says he could not brush his teeth for three days which led to his gums bleeding, and he could not wash his hands. *Id.* Scott alleges he asked defendant Stephens for an extra sheet or blanket and socks, but Stephens just walked off. *Id.* at 7. He claims these conditions caused him to lose sleep and to suffer anxiety, depression, humiliation, and embarrassment. *Id.* at 7-8.

Before the Court is Defendants' motion for summary judgment, supporting brief and statement of undisputed material facts (Doc. Nos. 19-21) as well as Scott's objection, supporting brief, and statement of disputed factual issues (Doc. Nos. 23-25). For the reasons stated herein, the Court finds there are no genuine issues of material fact for trial, and Defendants are entitled to judgment as a matter of law.

---

control and a state law claim for negligence. *See* Doc. Nos. 23-24. Because Scott did not properly amend his complaint to add these claims, the Court does not consider them. *See* Fed. R. Civ. P. 15(a)(2).

## II. Standard of Review

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986). When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party. *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002). The nonmoving party may not rely on allegations or denials, but must demonstrate the existence of specific facts that create a genuine issue for trial. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007). The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy. *Id.* (citations omitted). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

## III. Analysis

### A. Sovereign Immunity

Defendants correctly assert that Scott's monetary claims against them in their official capacities are barred by sovereign immunity. A suit against a defendant in his or her official capacity is in essence a suit against the State of Arkansas, and any official capacity claim for monetary damages against that defendant is barred by the doctrine of sovereign immunity. *Will v.*

*Michigan Department of State Police, et al.*, 491 U.S. 58, 71 (1989)*; Nix v. Norman*, 879 F.2d 429, 431-432 (8th Cir. 1989).  Accordingly, the undersigned recommends that Defendants' motion for summary judgment be granted as to any claim for monetary damages against them in their official capacities.

The undersigned also recommends summary judgment be granted in favor of Defendants with respect to Scott's claim for injunctive relief.  Scott requests that changes be made to ADC's behavior control policy and that officers receive training with respect to that policy.  Injunctive relief is an extraordinary remedy, particularly in a prison context.  *See Goff v. Harper*, 60 F.3d 518 (8th Cir. 1995) (citing *Rogers v. Scurr*, 676 F.2d 1211, 1214 (8th Cir. 1982)).  In *Rogers*, the Eighth Circuit Court of Appeals explained that injunctive relief is not appropriate unless it has been proven that a prisoner's constitutional rights were violated and a "cognizable danger of future violation exists" which is more than a mere possibility.  676 F.2d at 1214.  In sum, the Eighth Circuit held that courts should not interfere with prison administration "unless either a constitutional violation has already occurred or the threat of such a violation is both real and immediate."  *Id.*  As explained below, Scott has not shown that his constitutional rights were violated or that future violations of his rights are likely to occur without the injunctive relief he seeks.  Accordingly, summary judgment should be awarded in favor of Defendants as to Scott's claims for injunctive relief.

    **B.**    **Qualified Immunity**

Defendants argue they are entitled to qualified immunity with respect to Scott's individual capacity claims because Scott cannot establish a constitutional violation.  Qualified immunity protects government officials from liability for damages "insofar as their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person [in their

positions] would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Qualified immunity is a question of law and is appropriately resolved on summary judgment. *McClendon v. Story County Sheriff's Office*, 403 F.3d 510, 515 (8th Cir. 2005); *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). To determine whether a defendant is entitled to qualified immunity, the Court must consider two questions: (1) do the facts alleged by plaintiff establish a violation of a constitutional or statutory right; and (2) if so, was that right clearly established at the time of the defendant's alleged misconduct. *Wright v. United States*, 813 F.3d 689, 695 (8th Cir. 2015). Courts may exercise "their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). In considering whether the Defendants are entitled to qualified immunity, the Court first considers whether Scott has presented facts sufficient to show the violation of a constitutional right as to any of his claims, as discussed below.

*Retaliation*

Scott claims that Defendants violated his First Amendment rights by placing him on behavior control in retaliation for his history of writing grievances and for forming a non-profit organization called the "Black Bear Party" to fight corruption within the ADC. Doc. No. 2 at 4, 9.[2] Scott also claims that defendant Stephens refused to give him a blanket or socks while he was

---

[2] In his "Statement of Facts," Scott alleges that between September of 2013 and November of 2013, defendant Jackson failed to supervise a "certain group of night officers" who were intentionally retaliating and harassing ADC inmates; that he was moved to Isolation 4, a less desirable part of the prison, after forming the Black Bear Party in November 2013; that he was labeled "security threat group" to limit his movements; and that he was not moved to another cell "for mental relief" during his forty-eight hour relief periods while serving punitive time between February and March of 2014. Doc. No. 2 at 4-6. Scott does not set forth a legal claim based on these allegations in his "Statement of Legal Claims," and he does not request relief based on these allegations. *Id.* at 8-14. It appears Scott intended these allegations to provide background for his retaliation claim based on his April 2014 behavior control time. To the extent he attempts to make a different retaliation claim by including these facts, he has not alleged sufficient facts to set forth a claim. Further, Scott previously sued Jackson for retaliation based on his move to Isolation 4, and the Court dismissed that claim with prejudice. *See Scott v. Hobbs, et al.,* No. 5:14cv00346-DPM, at Doc. Nos. 63 & 67. Accordingly, that claim is barred. Finally, the Court notes

5

on behavior control in retaliation for grievances in which Scott complained about Stephens.  Doc. No. 2 at 10-11.

To succeed on a retaliation claim, Scott must prove that: (1) he engaged in protected activity; (2) defendants took adverse action against him that would chill a person of ordinary firmness from engaging in that activity; and (3) retaliation was the actual motivating factor for the adverse action.  *See Lewis v. Jacks,* 486 F.3d 1026, 1028 (8th Cir. 2007); *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004).  The writing of a grievance is protected activity.  *See Lewis v. Jacks*, 486 F. 3d at 1029.

With respect to Scott's placement on behavior control, Defendants assert that Scott cannot prove retaliation because they did not place him on behavior control.  "Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights."  *Mayorga v. Missouri*, 442 F.3d 1128, 1132 (8th Cir. 2006) (quoting *Madewell v. Roberts,* 909 F.2d 1203, 1208).  Defendants acknowledge that Malone reviewed the April 15, 2014 disciplinary regarding the masturbation allegation but Malone's only involvement was to forward the disciplinary to a hearing officer.  *See* Doc. No. 21-5.  Defendants maintain they were not otherwise involved in Scott's placement on behavior control.  To support their contention, Defendants submitted a security check log which shows that a Sergeant Burchfield, Sergeant Tranthem, and Lieutenant Bivens placed Scott on behavior control at 3:38 p.m. on April 15, 2014.  *See* Doc. No. 21-6.  Defendants also submitted a job/program assignment form which shows that Scott's placement on behavior control was authorized by Joseph Bivens.  *See* Doc. No. 21-7.  In response, Scott maintains that the Defendants heard about the masturbation allegation about three hours after it happened and put him on behavior control.  *See* Doc. No. 23 at 2.  Scott further acknowledges that

---

that Scott's claims relating to 48-hour relief periods during punitive time are currently pending in *Scott v. Burl*, No. 5:16cv00327-JLH-JVV.

it was Bivens who came to his cell at 3:53 p.m. on April 15, 2014, but says that Bivens was "just doing what he was ordered to do by Major Malone, and Warden Jackson." Doc. No. 23 at 4. Scott also cites a grievance he filed naming Malone and Jackson and Malone's response in which she stated the placement was not in retaliation. *Id*. In the face of evidence showing that it was Bivens and not the Defendants who made the decision to put Scott on behavior control, Scott cannot create a question of fact by merely stating his belief that Defendants were responsible. *See Conseco Life Ins. Co. v. Williams*, 620 F.3d 902, 909 (8th Cir. 2010) (quoting *Flentje v. First Nat'l Bank of Wynne,* 340 Ark. 563, 11 S.W.3d 531 (2000) ("When the movant makes a prima facie showing of entitlement to a summary judgment, the respondent must discard the shielding cloak of formal allegations and meet proof with proof by showing a genuine issue as to a material fact."). Scott also provides no specific evidence to show that these Defendants knew about constitutional violations against him and permitted it to occur. Therefore, Scott's retaliation claims against these Defendants fail.

Further, even if Scott could show that Defendants were personally involved in his placement on behavior control, Scott has not shown that retaliation was their motive. Scott bears the burden of showing his placement on behavior control would not have occurred "but for a retaliatory motive." *Haynes v. Stephenson*, 588 F.3d 1152, 1157 (8th Cir. 2009). Before the incident on April 15, 2014, Scott wrote grievances against Jackson regarding haircuts and length of showers and named Jackson and Stephens in a grievance regarding the procedures for 48-hour relief from punitive isolation. Doc. No. 20 at 7; Doc. No. 2 at 15, 19, 33. However, Scott did not name Malone in a grievance until after he was placed on behavior control in April 2014. *See* Doc. No. 20 at 7; Doc. No. 2 at 47. To support his claims of retaliatory motive, Scott cites the grievances he filed against Stephens regarding 48-hour relief from punitive isolation and the petition he sent

to Jackson on behalf of the Black Bear Party. *See* Doc. No. 23 at 5. Scott's subjective belief that Defendants acted in retaliation is not enough; he offers no objective evidence to support his allegation that he was put on behavior control at the direction of any of the Defendants because he had previously filed grievances against two of them and sent Jackson a petition on behalf of the Black Bear Party complaining about prison administration. The record shows that Scott was placed on behavior control because he was accused of masturbating in front of Nurse Halston and that he had a history of indecent exposure charges. *See* Doc. No. 21-10 (showing that Scott was found guilty of indecent exposure 31 times before April 15, 2014).

Finally, Scott's allegation that Stephens retaliated against him by not providing him with an extra sheet or blanket also fails as a matter of law. Stephens disputes that Scott asked him for an extra sheet or clothing (Doc. No. 21-11). However, even if Stephens refused Scott's request as Scott alleges, Scott cannot show a causal connection between the grievances he filed and Stephens' refusal to provide him with more clothes or an extra blanket. Scott also cannot show a retaliatory motive. This is because Scott already had what he was allowed to have while on behavior control. See Doc. No. 21-8 at 2 (inmates on behavior control allowed one blanket, appropriate undergarments, a paper gown, and a small quantity of toilet paper).

For these reasons, no material facts are in dispute as to Scott's First Amendment retaliation claims, and Defendants are entitled to summary judgment.

*Eighth Amendment Cruel and Unusual Punishment Claim*

Scott claims the conditions he endured while on 72-hour behavior control constituted cruel and unusual punishment. In accordance with the ADC's behavior control policy, Administrative Directive 13-161 – Behavior Control, Scott was allowed to keep one blanket and his boxers while the rest of his personal property and his mattress was removed from his cell. Doc. No. 2 at 7; Doc.

No. 21-8. He alleges the temperature inside the cell dropped into the 30s and 40s at night, and that Stephens refused to give him an extra sheet or blanket and socks. Doc. No. 2 at 7. Scott complains that he could not wash his hands and that his gums bled because he could not brush his teeth. *Id.* at 7. He claims these conditions caused him to lose sleep and to suffer anxiety, depression, humiliation, and embarrassment.

The treatment a prisoner receives in prison and the conditions of his confinement are subject to scrutiny under the Eighth Amendment. *Farmer v. Brennan,* 511 U.S. 825, 832 (1970). To prevail on a conditions of confinement claim, a prisoner must show (1) the alleged deprivation was, "objectively, sufficiently serious," and resulted "in the denial of the minimal civilized measure of life's necessities," and (2) prison officials were deliberately indifferent to "an excessive risk to inmate health or safety." *Farmer,* 511 at 834. The length of time a prisoner is exposed to unsanitary conditions is relevant to the Court's analysis as is the extent of the unclean conditions. *See Owens v. Scott County Jail,* 328 F.3d 1026, 1027 (8th Cir. 2003). A filthy cell may "be tolerable for a few days and intolerably cruel for weeks or months." *Hutto v. Finney,* 437 U.S. 678, 686–87 (1978). "The Constitution 'does not mandate comfortable prisons,' but neither does it permit inhumane ones, . . . " *Farmer v. Brennan*, 511 U.S. at 832 (quoting *Rhodes v. Chapman,* 452 U.S. 337, 349 (1981)); *see also O'Leary v. Iowa State Men's Reformatory,* 79 F.3d 82, 83–84 (8th Cir. 1996) (no constitutional violation for limited denial of underwear, blankets, mattress, exercise, and visits); *Williams v. Delo,* 49 F.3d 442, 446 (8th Cir.1995) (no constitutional violation for inmate confined to a "strip cell" for four days without clothes, water, bedding, a mattress, soap, or other hygiene items); *Seltzer-Bey v. Delo*, 66 F.3d 961, 963-964 (8th Cir. 1995) (finding no Eighth Amendment violation when inmate was placed in "strip cell for two days without clothing,

bedding, or running water, with a concrete floor, a concrete slab for a bed, and cold air blowing on him").

Scott was on behavior control for three days. His inability to brush his teeth or wash his hands did not deny him of life's necessities for an impermissible length of time. His main complaint is that he was cold; he maintains that the temperature fell into the 30s and 40s at night and that it was snowing outside. Doc. No. 2 at 7. Defendants provided a temperature log showing that the temperature inside Scott's cell block ranged from 69-70 degrees between April 14 and April 18, 2014. *See* Doc. No. 21-12. In his response, Scott alleges that these temperatures were taken during the day and not at night when the temperature drops. *See* Doc. No. 24 at 12. He also alleges that the temperatures were taken in the officer's control booths and that the officers have heat and air while the inmates in isolation do not. *See* Doc. No. 25 at 4-5. Scott offers no evidence to support these allegations. In light of the Defendants' evidence that the temperature was approximately 70 degrees, and the undisputed fact that Scott had a blanket, the Court finds the conditions imposed on Scott while he was on behavior control did not deprive Scott of the minimal civilized measure of life's necessities. *See Dixon v. Godinez,* 114 F.3d 640, 644 (7th Cir.1997) (whether the temperature in a cell denies an inmate life's necessities depends on the severity of the cold, its duration, and whether the prisoner had an alternative adequate means to protect himself from the cold). Finally, Scott does not allege that he has suffered or is suffering any real injury or health impairment as a result of these conditions. *See* 42 U.S.C. 1997e(e) (showing of physical injury required in federal civil action brought by inmate seeking compensatory damages for injury suffered in custody). Although Scott may have been uncomfortable in these conditions, this kind of discomfort does not rise to the level of a denial of a civilized measure of life's necessities, and accordingly, Defendants are entitled to summary judgment on Scott's Eighth Amendment claim.

*Fourteenth Amendment Due Process Claim*

Scott claims his due process rights were violated by his placement on behavior control. He claims the ADC's behavior control policy, Administrative Directive 13-161 – Behavior Control, created a liberty interest, and that he was denied that liberty interest by being kept on behavior control for a full 72 hours even though his behavior was under control. Doc. No. 2 at 10. He argues that he did not display the behavior necessary to be put on behavior control in the first place, and that he was not monitored and taken off behavior control in accordance with ADC policy. *Id.*

To prevail on a Fourteenth Amendment Due Process claim, a prisoner "must first demonstrate that he was deprived of life, liberty, or property by government action." *See Phillips v. Norris,* 320 F.3d 844, 846 (8th Cir. 2003). Placement on Behavior Control would implicate a liberty interest only where the punishment results in an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Furthermore, in *Phillips v. Norris*, the Court stated, "We have consistently held that a demotion to segregation, even without cause, is not itself an atypical and significant hardship," and held that the absence of contact visitation, exercise privileges, and chapel rights for 37 days did not constitute an atypical and significant hardship. 320 F.3d at 847. *See also Ballinger v. Cedar Cnty.*, 810 F.3d 557, 562-563 (8th Cir. 2016) (finding no atypical hardship where claimant alleged reduced access to showers, telephone use, exercise, and social interaction with others); *Orr v. Larkins,* 610 F.3d 1032, 1034 (8th Cir. 2010) (demotion to segregation, even without cause, is not atypical and significant hardship); *Portley-El v. Brill*, 288 F.3d 1063, 1065-66 (8th Cir. 2002) (thirty days in punitive segregation was not an atypical and significant hardship); *Driscoll v. Youngman*, 124 F.3d 207 (8th Cir. 1997) (unpublished decision) (135 days in disciplinary and

administrative segregation without "meaningful exercise, natural light or adequate time in the library" did not amount to an atypical and significant hardship); *Hemphill v. Delo,* 124 F.3d 208 (8th Cir. Sept. 22, 1997) (unpublished decision) (finding that four days of lock-down, thirty days in punitive disciplinary segregation, and 290 days in administrative segregation did not constitute an "atypical and significant hardship" under *Sandin*).

Scott's experience on behavior control does not rise to an atypical and significant hardship. Accordingly, Scott has no underlying liberty interest and his due process claim must fail. Further, Scott's claim that the Defendants violated ADC's behavior control policy also fails to establish a federal due process violation. Failure to follow ADC policy does not state a claim for relief under 42 U.S.C. § 1983. *See McClinton v. Arkansas Dep't of Corr.,* 166 F. App'x 260 (8th Cir. 2006) (citing *Kennedy v. Blankenship,* 100 F.3d 640, 643 (8th Cir. 1996)). *See also Gardner v. Howard*, 109 F.3d 427, 430 (8th Cir. 1997) (holding that "there is no § 1983 liability for violating prison policy."); *Williams v. Nix*, 1 F.3d 712, 717 (8th Cir. 1992) ("[T]he mere violation of a state law or rule does not constitute a federal due process violation.").

## IV.  Conclusion

Summary judgment is appropriate as to all monetary claims against Defendants in their official capacities because those claims are barred by sovereign immunity. Further, because the Court finds Scott's constitutional rights were not violated, summary judgment should be granted in favor of Defendants on Scott's claim for injunctive relief. Finally, because Scott fails to establish a constitutional violation, the Defendants are entitled to qualified immunity as to Scott's individual capacity claims. Defendants' motion for summary judgment should be granted and this case should be dismissed with prejudice in its entirety.

IT IS THEREFORE RECOMMENDED THAT:

1. Defendants' motion for summary judgment (Doc. No. 19) be GRANTED, and plaintiff Deverick Scott's complaint be DISMISSED WITH PREJUDICE.

2. The Court certify that an *in forma pauperis* appeal taken from the order and judgment dismissing this action is considered frivolous and not in good faith.

DATED this 24th day of July, 2017.

_____
UNITED STATES MAGISTRATE JUDGE